## HECKLER, SECRETARY OF HEALTH AND HUMAN SERVICES *v.* TURNER ET AL.

No. A–59 (83–1097).   Decided August 10, 1984

JUSTICE REHNQUIST, Circuit Justice.

The Solicitor General, on behalf of the Secretary of Health and Human Services, requests that I stay, pending review by this Court, prospective enforcement of the permanent injunction entered by the United States District Court for the Northern District of California on July 29, 1982, *Turner* v. *Woods*, 559 F. Supp. 603, and affirmed by the United States Court of Appeals for the Ninth Circuit, *Turner* v. *Prod*, 707 F. 2d 1109 (1983).   The issue before the District Court was whether the $75 standard work expense disregard in § 402(a)(8)(A)(ii) of the Aid to Families with Dependent Children (AFDC) statute, 42 U. S. C. § 602(a)(8)(A)(ii) (1976 ed., Supp. V), is deducted from net income or gross income in determining AFDC eligibility and benefits.   That court concluded that the disregard was intended by Congress to be

deducted from net income, and it entered a permanent injunction prohibiting state and federal officials

"from including mandatory payroll deductions such as federal, state and local income taxes, Social Security taxes (F. I. C. A.) and state disability insurance within the definition of 'income' in interpreting and applying that term as used in Section 602(a)(7)(A) of Title 42 of the United States Code [§ 402(a)(7)(A) of the AFDC statute]." 559 F. Supp., at 616.

The Ninth Circuit's affirmance of the District Court's interpretation is in conflict with decisions of the Third and Fourth Circuits, causing a significant disparity in the treatment of AFDC beneficiaries based solely on residence. This Court granted the Secretary's petition for a writ of certiorari to resolve the conflict. 465 U. S. 1064 (1984).

Subsequently, on July 18, 1984, the President signed into law the Deficit Reduction Act of 1984, Pub. L. 98–369, 98 Stat. 494. Section 2625(a) of that Act, entitled "Clarification of Earned Income Provision," amends § 402(a)(8) of the AFDC statute to provide that "in implementing [§ 402(a)(8)] the term 'earned income' shall mean gross earned income, prior to any deductions for taxes or for any other purposes." This amendment became effective on the date of enactment.

The Secretary argues in her application for a stay that Congress has resolved, at least from the date of enactment of this amendment forward, the precise issue on which we granted certiorari. In their memorandum in opposition to the Secretary's application for a stay, which I requested, the AFDC respondents argue that the Deficit Reduction Act, while resolving the meaning of "earned income" in § 402(a)(8), does not resolve the meaning of "income" in § 402(a)(7)(A) and thus does not overrule, prospectively, the interpretation of the Ninth Circuit on the ultimate issue of whether the $75 standard work expense disregard is deducted from net income or gross income. In my judgment, respondents' position is wrong. The Conference Report to the Deficit Reduc-

tion Act refers specifically to the conflict between the Ninth Circuit on the one hand and the Third and Fourth Circuits on the other, including the fact that this Court has agreed to hear the Ninth Circuit case, and states that the Act

> "[a]mends the AFDC statute to make clear that the term 'earned income' means the gross amount of earnings, prior to the taking of payroll or other deductions." H. R. Conf. Rep. No. 98–861, pp. 1394–1395 (1984).

From the Report's discussion, it seems clear to me that Congress intended the amendment of § 402(a)(8) to resolve the conflict, at least for the future, on the issue on which we granted certiorari. I do not see how this discussion is either confusing or ambiguous, as claimed by respondents.

The Secretary has made out a compelling case for a prospective stay. Effective July 18, 1984, she is unambiguously directed by statute to deduct the work expense disregard from gross income, prior to any deductions for taxes or for any other purposes; yet she is still subject to an injunction prohibiting her from doing the same. When this Court decides the merits of the Ninth Circuit decision affirming the injunction, which was based on the statute as it stood prior to the Deficit Reduction Act, the Court will probably also decide the validity of the injunction after the effective date of the Act. As is evident from the discussion above, I think there is a high probability that the Court will determine, as urged by the Secretary in this application, that the injunction is prospectively improper and should be dissolved as to AFDC eligibility and benefit determinations subject to the July 18, 1984, amendment. I express no opinion on the merits prior to the effective date of the Deficit Reduction Act.

I also conclude that without a stay the Secretary will suffer irreparable injury. If she succeeds on the merits, which I am confident she will as to the future interpretation of the work expense disregard, the continued application of the injunction will result in approximately $2.6 million in improper

AFDC payments each month, divided equally between the Federal Government and the State of California, a figure which respondents apparently concede. Should the Secretary ultimately lose on this issue, respondents and others so entitled will be able to collect back AFDC payments that would have been made but for the requested stay. On the other hand, it is extremely unlikely that the Secretary would be able to recover funds improperly paid out. See *Edelman* v. *Jordan*, 414 U. S. 1301, 1302–1303 (1973) (REHNQUIST, J., in chambers). A stay is, therefore, appropriate.

Finally, the individual respondents cite this Court's Rule 44.4, which provides that an application for a stay to a Justice "shall not be entertained, except in the most extraordinary circumstances," unless the relief requested has first been sought below, and argue that there are no extraordinary circumstances present in this case. They further cite my opinions in *Conforte* v. *Commissioner*, 459 U. S. 1309 (1983) (in chambers), and *Dolman* v. *United States*, 439 U. S. 1395 (1978) (in chambers), where stays were denied in part for failure to apply first for a stay in the lower courts. In *Conforte* there was no reasonable probability that certiorari would have been granted, and the applicant had not shown any legitimate reason, let alone extraordinary circumstances, for not seeking a stay in the Court of Appeals. In *Dolman* the information presented to me in the application for a stay was sketchy as to whether the applicants had requested a stay below, and there was *no apparent reason for not requesting* such a stay below.

The situation in the instant case is quite different. The reason for requesting a stay arose only after this Court granted certiorari and was not available when the case was before the lower courts. The Secretary contends that because certiorari had been granted, it was doubtful that either the District Court or the Court of Appeals had the authority to modify the injunction. I agree with the Secretary that such doubt exists; and whether or not an application to one of the lower courts would have been proper under the circum-

stances, I believe an application directly to this Court is not improper.

I think there are compelling reasons to grant immediate relief. With respect to the future propriety of the injunction, the Secretary is almost certain to prevail on the merits, because of the intervening congressional action. Every day the injunction remains in force the clearly expressed intent of Congress is being frustrated, and public funds are being improperly expended without realistic possibility of recovery at the rate of $2.6 million per month. It would be an empty and costly formality to force the Secretary to refile her application in the lower courts. In my judgment, the "most extraordinary circumstances" requirement of Rule 44.4 is met in the unusual circumstances of this case.

The application for a stay of the District Court injunction is granted prospectively from July 18, 1984.