84 F.3d 1432
 318 U.S.App.D.C. 58
 NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE,
JEFFERSON COUNTY BRANCH, et al., Appellees,
v.
UNITED STATES SUGAR CORPORATION and Sugar Cane Growers
Cooperative of Florida, Appellants.
 Nos. 95-5044, 95-5110.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 22, 1996.
Decided May 28, 1996.
Rehearing Denied Aug. 21, 1996.
 
 [318 U.S.App.D.C. 59] Appeals from the United States District Court for the District of Columbia (82cv02315).
 [318 U.S.App.D.C. 60] Vincent C. Costantino, Assistant Counsel, U.S. Department of Labor, and John M. Simpson, Washington, DC, argued the causes for appellants. With them on the briefs were Eric H. Holder, Jr., United States Attorney, R. Craig Lawrence and Michael J. Ryan, Assistant United States Attorneys, Harry L. Sheinfeld, Counsel, U.S. Department of Labor, and Robert A. Burgoyne, Washington, DC. Robert E. Muraro and Sarah L. Schweitzer entered appearances pro hac vice for the United States Sugar Corporation.
 Edward J. Tuddenham, Austin, TX, argued the cause for appellees. With him on the brief was Robert A. Williams, Tallahassee, FL. Bruce Goldstein, Washington, DC, and Shelley Davis, Chicago, IL, entered appearances.
 Before: GINSBURG, RANDOLPH, and TATEL, Circuit Judges.
 Opinion for the Court filed by Circuit Judge RANDOLPH.
 RANDOLPH, Circuit Judge:
 
 
 1
 In 1982, the Jefferson County Branch of the National Association for the Advancement of Colored People and six named farm workers filed this class action against the Department of Labor in the United States District Court for the District of Columbia. Fourteen years, three dismissals, and six Secretaries of Labor later, these plaintiffs ask us to send this case back to that court for a hearing on the Department's interpretation of regulations governing certifications no longer sought for workers no longer employed under a pay system no longer in place for a harvesting method no longer in use. We must decline the invitation.
 
 
 2
 * This tale of government regulation, grower certification and perpetual litigation began with apples. In 1982, plaintiffs challenged the Department's interpretation of its temporary foreign worker program as applied to certain West Virginia apple growers. The program allowed a grower to import foreign farm workers only upon the Department's certification that there were not enough domestic workers to meet the grower's needs and that importing foreign workers would not adversely affect the wages and working conditions of similarly situated domestic farm workers. To implement wage protection, the Department each year calculated something called the "adverse effect wage rate," or "AEWR," an hourly wage which growers had to promise to pay both domestic and foreign workers in order to receive foreign-worker certification.
 
 
 3
 The AEWR worked well enough for growers who paid workers by the hour, but it presented an opportunity for abuse by growers who paid workers by the piece. Consider, for instance, a grower operating under a piece-rate system who promises to meet an AEWR of $5 per hour by paying 50 cents per bushel of apples picked. This would be acceptable only if an average farm worker picked 10 bushels per hour. But what if the AEWR increased the following year to $6 per hour? Then the grower could purport to meet it either by raising the rate to 60 cents per bushel or by representing that the average farm worker would pick 12, rather than 10, bushels per hour. To prevent the latter, the Department promulgated a regulation requiring growers to raise their rates, not their productivity expectations, when the AEWR increased. 20 C.F.R. § 655.207(c).
 
 
 4
 In their 1982 complaint, the plaintiffs alleged that the Department misinterpreted this regulation when it preliminarily certified West Virginia apple growers despite the fact that they had effectively increased their productivity expectations from one year to the next by changing the piece-rate from a per-bushel to a per-box basis. The district court agreed, ultimately entering a judgment interpreting the regulation to preclude the West Virginia apple growers from increasing their productivity expectations above the original levels they proposed in 1977 and to require growers to increase their piece-rates in proportion to the annual increases in the AEWR. NAACP v. Donovan, 558 F.Supp. 218 (D.D.C.1982). The court then ordered the Department to condition all future foreign-worker certifications upon the applicant's conforming to those requirements. Id.
 
 
 5
 [318 U.S.App.D.C. 61] Thus ended the apple phase of the case. The sugar cane phase began in 1986, when the plaintiffs--some of whom worked as both apple-pickers and sugar-cane cutters--filed a motion for further relief alleging that the Department was not enforcing its piece-rate regulations in the sugar cane industry. At the time, Florida sugar cane growers paid their workers according to a "task-rate" system. Under it, workers were paid per row of sugar cane harvested, with the value of any particular row adjusted to reflect the degree of difficulty in harvesting it. The Department argued that this task-rate system was not a piece-rate system and therefore was not subject to the regulation. The Department conceded, however, that the administrative record was not adequate to resolve the issue, and on September 25, 1986, the district court ordered it to gather the information necessary to determine how the sugar cane growers paid their workers, whether that method amounted to a piece-rate system, and if it did, whether the rates paid under that method comported with the court's 1982 decision.
 
 
 6
 The Department responded with a draft report in 1987. It took another five years for the Department to prepare the final version of the report; the delay was due, in large part, to battles between the plaintiffs and sugar growers over the third-party discovery the district court had granted the plaintiffs in order to prepare their response to the draft report. During the delay, the Department replaced the original piece-rate regulation, 20 C.F.R. § 655.207(c), with a new one, 20 C.F.R. § 655.202(B)(2). In response, the district court allowed the plaintiffs to file a second supplemental complaint challenging both regulations, and then permitted United States Sugar Corporation and the Sugar Cane Growers Cooperative ("the growers") to intervene in the case. But when the plaintiffs attempted to add the intervenors as defendants, the district court decided that, because the Department was still preparing its final report, the case should be dismissed without prejudice subject to the plaintiffs' "right to reopen the case" by telephoning the court's clerk anytime after April 1993, the court's deadline for the Department to finish its report.
 
 
 7
 Seven months after the April 1993 deadline passed, the Department finished the report and filed it with the district court. The Department found that the sugar growers did not pay their workers by a piece-rate and that the certifications granted those growers therefore had not violated either the original or the new piece-rate regulation. The plaintiffs immediately filed a motion to re-open the case. In response, the Department and the growers moved to dismiss on various jurisdictional grounds. During a hearing on the morning of December 16, 1993, the district court said it would dismiss the case again. Later that day, the court reconsidered and issued an order vacating the dismissal and setting a briefing schedule "to govern the final disposition of this case."
 
 
 8
 Two months later, the district court issued an opinion and order rejecting the jurisdictional arguments the defendants had raised before the dismissal and reinstatement. NAACP v. United States Sec'y of Labor, 846 F.Supp. 91 (D.D.C.1994). Thereafter, all of the parties filed motions for summary judgment. On September 22, 1994, the district court granted the farm workers' motion for summary judgment "but only to the extent that the conclusions within the Department of Labor's Final Report cannot be upheld." NAACP v. United States Sec'y of Labor, 865 F.Supp. 903, 926 (D.D.C.1994). In an accompanying opinion, the court rejected the report's conclusions as arbitrary and capricious, id. at 910, and identified certain issues left to be resolved in light of that rejection, id. at 922. The court said it was prepared to conduct an evidentiary hearing to take testimony on those issues, id. at 925, and it directed the parties to file a joint pleading setting out "an orderly framework for the presentation of all necessary issues." Id. at 927. Upon receiving the joint pleading, the court entered an order scheduling discovery, dispositive motions, and an evidentiary hearing. The growers responded by filing an emergency writ of mandamus and something they called a "protective notice of appeal." We denied the mandamus relief on November 17, 1994, and dismissed the appeal on March 8, 1995.
 
 
 9
 [318 U.S.App.D.C. 62] On December 22, 1994, the Department filed in the district court a renewed motion for summary judgment. The motion prompted the third dismissal of the case: on February 6, 1995, the district court, apparently reconsidering the need for an evidentiary hearing, dismissed the case without prejudice and remanded it to the Department for consideration of the remaining issues raised in the court's September 22 order. NAACP v. United States Sec'y of Labor, Civ. No. 82-2315 (D.D.C. Feb. 6, 1995). The Department and the growers filed timely notices of appeal.
 
 II
 
 10
 As a threshold matter, the plaintiffs challenge this court's jurisdiction to hear these appeals. This court has jurisdiction over appeals of "final decisions of the district courts." 28 U.S.C. § 1291. The plaintiffs argue, however, that the district court's February 6, 1995, dismissal of the case was not a "final decision" because the district court simultaneously remanded the case to the Department.
 
 
 11
 A remand order usually is not a final decision, Occidental Petroleum Corp. v. SEC, 873 F.2d 325, 329 (D.C.Cir.1989), even if the district court dismisses the case when it remands. American Hawaii Cruises v. Skinner, 893 F.2d 1400, 1403 (D.C.Cir.1990). However, such an order is reviewable in this court "when the agency to which the case is remanded seeks to appeal and it would have no opportunity to appeal after the proceeding on remand." Occidental Petroleum, 873 F.2d at 330; see also American Hawaii Cruises, 893 F.2d at 1402 n.*; Gueory v. Hampton, 510 F.2d 1222, 1225 (D.C.Cir.1974).
 
 
 12
 The situation described in Occidental Petroleum is precisely the situation here. In its remand/dismissal order, the district court made clear to the Department that it should "provide an explanation for," "re-examine very seriously," and "re-evaluate" certain of its conclusions, "examine carefully" certain data offered by the plaintiffs, and "take what we in the law call a 'hard look' at this case." As we explained in Occidental, an agency confronted with such a remand order "has no choice but to conduct its proceedings and to render its decision pursuant to that [order]. Unless another party appeals [the agency's resulting] decision, the correctness of the district court's legal ruling will never be reviewed by the court of appeals, notwithstanding the agency's conviction that the ruling is erroneous." 873 F.2d at 330. To avoid that situation here, the rule of Occidental gives us jurisdiction to hear the Department's appeal now.
 
 
 13
 The growers' appeal raises a different question. Unlike the Department, if the growers are unhappy with the Department's proceedings on remand, they may challenge those proceedings--and the remand order requiring them--after those proceedings have come to an end. Thus, the Occidental rule does not apply to their appeal. See Occidental Petroleum, 873 F.2d at 331 (acknowledging that while "a private party may not, in most cases, immediately appeal a district court order remanding a case for further agency proceedings, the agency may do so"). Nonetheless, what matters for the purposes of our appellate jurisdiction is whether the district court's decision--and not any particular party challenging it--is properly before us, which it is as a result of the Department's appeal. We therefore may also consider the growers' arguments against that decision. Cf. Railway Labor Executives' Ass'n v. United States, 987 F.2d 806, 810 (D.C.Cir.1993).
 
 
 14
 The plaintiffs raise one other challenge to this court's jurisdiction to review the district court's February 6, 1995, order. Even if the order is appealable, they say, subsequent events have made any appeal from it moot. In the order, the district court dismissed the case "without prejudice to the right of the Plaintiffs, the Defendants or the Defendant-Intervenors to re-open" it by telephoning the court's clerk on or before June 30, 1995. The plaintiffs take this as a deadline for the Department to respond to the remand order; now that the date has passed, the remand order is, they say, "a dead letter." We have a different view. Although the order set a deadline for requests to re-open the case, it set no timetable for the [318 U.S.App.D.C. 63] Department's response to the remand order. Given the pace of this litigation, it is no surprise that the Department's response has not yet come. In a June 6, 1995, letter to counsel and the district court, the Department said it planned to defer further action on the court's remand order until the conclusion of related litigation pending in the state courts of Florida. The remand order may be stagnant, but it is still alive. The appeal cannot, therefore, be moot, and the balance of this opinion will be devoted to deciding it.
 
 
 15
 In their second supplemental complaint, the plaintiffs sought both prospective and retrospective relief. They asked the district court first to find that the sugar cane growers' task-rate system was actually a piece-rate system subject to the Department's piece-rate regulation, then to enjoin the Department from granting foreign-worker certification to any sugar cane grower unless the grower (1) complies with the piece-rate regulations and (2) agrees to provide back pay to the workers to compensate them for past violations of those regulations. Largely because this case has taken so long to unfold, the plaintiffs' claim for prospective relief is now moot, and they lack standing to maintain their claim for retrospective relief.
 
 
 16
 In the ten years since the sugar cane phase of this case began, the Florida sugar cane industry has undergone dramatic change. In an agreement reached with farm worker representatives before the 1992 harvesting season, U.S. Sugar Corporation abandoned the task-rate system at the heart of this case and began paying workers on a per-ton basis using estimates of tonnage cut, with adjustments made after the cane was weighed at the mill. During the 1992-93 harvesting season, the Department determined that this "per-ton" system had become the prevailing method of payment. As such, it became mandatory on all growers seeking foreign-worker certification for the 1993-94 season.
 
 
 17
 At least partly as a result of that requirement, most of the sugar growers who historically had sought foreign-worker certification declined to do so beginning with the 1993-94 season. Instead, they shifted to mechanized harvesting. Only U.S. Sugar stuck with the "per-ton" system for the 1994-95 season, but it too then shifted to mechanized harvesting. Thus, since the end of the 1994-95 season, no sugar grower has sought foreign-worker certification. As the Department explains, "The sugar cane task-rate system has disappeared, and none of the sugar cane growers are using the [foreign-worker certification] system."
 
 
 18
 The plaintiffs do not challenge the Department's statement, but they say their dispute over the proper application of the foreign-worker regulation remains alive because there is a "reasonable expectation" that the injury giving rise to their suit will recur. Honig v. Doe, 484 U.S. 305, 318-19, 108 S.Ct. 592, 601-02, 98 L.Ed.2d 686 (1988). This is a prediction, and it could come to pass only if the sugar cane growers abandoned their mechanized harvesting system, and only if they then reverted to the discontinued task-rate pay system, and only if they sought Department certification of foreign workers. At oral argument, counsel for the sugar cane growers said his clients have "no present plans" to do anything of the sort. See Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia, 972 F.2d 365, 370 (D.C.Cir.1992). The plaintiffs say, however, that the growers could be forced to return to a manual harvest "if a weather emergency arises." Perhaps so, but that prospect is not enough. While repetition of injury need not be "demonstrably probable" to save a case from being moot, the expectation of repetition must be "reasonable." Honig, 484 U.S. at 318 n. 6, 108 S.Ct. at 601 n. 6. We are aware of no case holding that the mere possibility of a freakish act of nature suffices. Even if a "weather emergency" did force growers to seek foreign-worker certification, they still very likely would be bound by the Department's determination that the per-ton system was the prevailing--and therefore required--pay system. In all likelihood, then, the growers could not return to the disputed task-rate system even if they wished to do so. The plaintiffs' claims for prospective relief are therefore moot, and the district court erred in not dismissing them as such. See North [318 U.S.App.D.C. 64] Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971).
 
 
 19
 A different jurisdictional defect plagues the plaintiffs' bid for retrospective relief. The plaintiffs asked the district court to force the Department to condition any future foreign-worker certifications on the sugar cane growers' payment of back pay for past violations. To maintain that claim--or any other--the plaintiffs must first establish that they have standing to raise it. At a minimum, that requires the plaintiffs to show that they have suffered some "actual or threatened injury" that can be "fairly traced" to the Department's past certifications and that is "likely to be redressed by a favorable decision" in the case. See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758-59, 70 L.Ed.2d 700 (1982). The plaintiffs' claim for retrospective relief fails the last of those tests: their "injury" from prior certifications cannot be redressed by a decision in this case. The Department has neither statutory nor regulatory authority to order the growers to provide back pay. See 20 C.F.R. § 655.110. The Department could deny future labor certifications in hopes of forcing growers to provide back pay, but Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), almost certainly would prohibit the court from directing the Department to do so. Moreover, for reasons we have just discussed, such "relief" would be quite unlikely to redress the plaintiffs' injury. The sugar cane growers are not exactly lining up to seek foreign-worker certification. The imposition of a back pay requirement would only diminish their desire to do so. Thus, even if back pay were made a condition of future certification, it strikes us as highly unlikely that the plaintiffs would ever benefit. Yes, it is hypothetically possible that a weather emergency could force the growers to seek certification again, but that "remote possibility" is not enough to establish that the plaintiffs' claim for retrospective relief would be redressed by a decision in this case. See Warth v. Seldin, 422 U.S. 490, 505, 95 S.Ct. 2197, 2208, 45 L.Ed.2d 343 (1975).
 
 
 20
 In the face of these problems, the plaintiffs hope to keep their retrospective-relief claim alive by arguing that they are entitled to an order for restitution from the sugar cane growers themselves. The plaintiffs did not make a claim for restitution from the growers before the district court. Indeed, the plaintiffs did not make any claims against the growers; the district court rejected their attempt to add the intervening sugar cane growers as defendants. The plaintiffs seek cover in Rule 54(c) of the Federal Rules of Civil Procedure, which requires courts to "grant the relief to which the party ... is entitled, even if the party has not demanded such relief in the party's pleadings." FED.R.CIV.P. 54(c). Whether this assists them in establishing standing is far from certain. Rule 54(c) "comes into play only after the court determines it has jurisdiction.... [Only after] jurisdiction is established and a claim is heard, [does] Rule 54(c) permit the court to consider relief not specifically pleaded." Dellums v. U.S. Nuclear Regulatory Comm'n, 863 F.2d 968, 975 n. 8 (D.C.Cir.1988); see also Z Channel Ltd. Partnership v. Home Box Office, Inc., 931 F.2d 1338, 1345 (9th Cir.1991) (Kozinski, J., dissenting), cert. denied, 502 U.S. 1033, 112 S.Ct. 875, 116 L.Ed.2d 780 (1992). In any event, Rule 54(c) applies only if the party has sought some relief from the particular opposing party. See Dopp v. HTP Corp., 947 F.2d 506, 518 (1st Cir.1991); Flannery v. Carroll, 676 F.2d 126, 131-32 (5th Cir.1982). To rely on relief plaintiffs never requested on a claim they never made would be to conclude that zero plus zero equals more than zero.
 
 
 21
 * * *
 
 
 22
 For the foregoing reasons, we remand this case to the district court with directions to dismiss. The case is largely moot. What is not, the plaintiffs lack standing to maintain. And lest there be any confusion, we wish to make it perfectly clear that curing the latter will not fix the former. That is, even if the plaintiffs can come up with a way to file a claim for back pay directly against the growers, that will not be enough to bring their claim against the Department back from the dead. What's moot is moot, and the filing of [318 U.S.App.D.C. 65] a different claim against a different party cannot make it otherwise.
 
 
 23
 So Ordered.