AMERICAN CETACEAN SOCIETY, et al., Plaintiffs,

v.

Malcolm BALDRIGE, et al., Defendants,

and

The Japanese Fishing Association & The Japanese Whaling Association, Defendants-Intervenors.

Civ. A. No. 84–3414.

United States District Court, District of Columbia.

March 13, 1985.

William D. Rogers, James A. Beat and John F. Libby of Arnold & Porter, Washington, D.C., for plaintiffs.

F. Henry Habicht II, Asst. Atty. Gen., Donald A. Carr and Dianne H. Kelly, U.S. Dept. of Justice, Washington, D.C., Peter H. Flournoy, of counsel, Office of the Legal Advisor, U.S. Dept. of State, Washington, D.C., and Robert McManus, General Counsel, Nat. Oceanic and Atmospheric Admin., Dept. of Commerce, Washington, D.C., for defendants.

Scott C. Whitney and Steven R. Perles, Washington, D.C., for defendants-intervenors.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court are the defendants' and defendant-intervenors' applications for a stay pending appeal of the Court's March 5, 1985 Opinion and Order, 604 F.Supp. 1398, in this case. That decision was based on the Court's determination of the clear intent and design of Congress in passing the Packwood-Magnuson Amendment to the Magnuson Fishery Conservation and Management Act of 1976, 16 U.S.C. §§ 1821(e)(2)(A)(i) and (B), to create an automatic process whereby any foreign nation whaling in excess of established International Whaling Commission ("IWC") quotas would be certified as such to the President and would, as a sanction, have their fishing allocation in U.S. waters cut by at least 50 per cent. 16 U.S.C. § 1821(e)(2)(B). The Court found that the phrase "diminish the effectiveness of the Convention," which acts as the certification trigger in both Packwood-Magnuson and the earlier Pelly Amendment to the Fishermen's Protective Act of 1967, 22 U.S.C. § 1978, was sufficiently ambiguous as to require resort to the legislative history of both Amendments to determine the meaning of that phrase.

 A careful and thorough reading of that legislative history clearly showed that Congress, when enacting both Amendments, had specifically in mind the situa-

tion at issue in the present case, that of a foreign nation attempting to circumvent an international fisheries treaty by filing an objection to the established quota and fishing in excess of that quota. Packwood-Magnuson was enacted solely for the purpose of creating a mandatory and automatic sanction in the event a foreign nation should act to "diminish the effectiveness" of the IWC. The legislative history, as well as consistent administrative interpretation and action, establishes that any nation whaling in violation of an established IWC quota is necessarily "diminishing the effectiveness" of the International Convention for the Regulation of Whaling. The defendants were unable to cite any legislative history to the contrary. Indeed, as noted above, prior agency interpretation and action has been thoroughly consistent with the Court's analysis. Further, the Court determined that the intervenors' arguments about the legality of the quotas themselves under international law were irrelevant to the issue at bar, as the Amendments apply to *any* nation violating the IWC quotas, regardless of whether that nation is an IWC signatory or if it has filed a valid objection. Finally, the Court found that there had been no violation of the Administrative Procedure Act by the creation of the certification and sanction mechanism. There was no notice and hearing requirement under 5 U.S.C. § 556, as that section only sets forth the procedural rights that are available when a trial-type hearing is required by statute. Neither Pelly nor Packwood-Magnuson require such a hearing. Nor was the agency required to promulgate interpretive rules prior to exercising its duty to certify. *SEC v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

### ANALYSIS

**I. THE DEFENDANTS HAVE FAILED TO MEET THE FOUR–PART TEST FOR GRANTING A STAY PENDING APPEAL, AND, THEREFORE, THE COURT WILL DENY BOTH APPLICATIONS.**

The applicants for a stay of the Court's March 5, 1985 Opinion and Order argue

that the defendants and defendant-intervenors have passed the four-part test set forth in *Virginia Petroleum Jobbers Association v. FPC*, 259 F.2d 921 (D.C.Cir. 1958). That test requires the Court to weigh four factors in reaching its decision: (1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? (2) Has the petitioner shown that without such relief, it will be irreparably injured? (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? (4) Where lies the public interest? *Id.* at 925.

a) *Petitioners Have Not Shown A Strong Likelihood Of Prevailing On The Merits.*

 The first, and most important, hurdle which the petitioners must overcome is the requirement that they present a strong likelihood of prevailing on the merits of their appeal. "Without such a substantial indication of probable success, there would be no justification for the Court's intrusion into the ordinary processes of administration and judicial review." *Virginia Petroleum Jobbers, supra* at 925. Even should the petitioner show irreparable harm would result without the imposition of stay, if the requirement of a strong likelihood of success is not met, the petition will be denied. *Blankenship v. Boyle*, 447 F.2d 1280 (D.C. Cir.1971). This does not mean that the petitioner's chances of success on appeal must appear as a "mathematical probability," but that the trial court, in the exercise of its discretion, must weigh the probability of success on appeal in a "balance of equities" with the other three factors. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C.Cir.1977). The motion to stay may be granted, therefore, when a "serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." *Id.*

 The Court finds that that petitioners have failed to meet this first test. As noted above, and discussed fully in the

Court's Opinion, the undisputed facts and legislative history are overwhelmingly against their position in this case. Defendants were unable to cite any legislative history which contradicted the interpretation laid out by this Court's Opinion. Further, the petitioners position flies in the face of years of consistent agency interpretation that whaling in violation of an established IWC quota necessarily diminishes the effectiveness of the IWC. Even when weighed with the other three factors, petitioners have failed to present a serious legal question which would suggest to the Court a need to retain the status quo. For these, and all the other reasons set forth both above and in the Court's Opinion, this crucial requirement for interim relief has not been met.

b) *Petitioners Have Failed To Show Irreparable Harm.*

The second factor to be considered is whether the petitioners will suffer irreparable harm should the stay be denied. As noted above, however, even with a showing of irreparable injury, it is within the Court's discretion to deny the application should petitioners fail to make a strong showing of likelihood of success on appeal. *Blankenship v. Boyle, supra.* Here, petitioners have failed to show how they would be irreparably harmed by the denial of the stay. The federal petitioners argue that the denial of a stay would interfere with United States foreign policy by causing an abrogation of the November 13, 1984 exchange of letters between the Secretary of Commerce and the Japanese which gave rise to the present suit. They argue that efforts to resolve whaling issues with Japan and other nations in a non-confrontational manner, by using Packwood-Magnuson as a lever to extract commitments, will be irrevocably harmed. However, Congress did not intend Packwood-Magnuson to be used only as a threat, not to be put into practice unless it is the last resort with recalcitrant countries. Rather, it is clear that the Amendment was meant to be an automatic sanction, necessarily triggered by a violation of the IWC quota. Thus, the

federal defendants may not lawfully use it as a bargaining chip in a situation such as is presented in this case. Further, to say that the credibility of the United States in the realm of foreign policy is the primary consideration to be protected is to actually argue against the stay itself. As the Japanese are well aware, this nation is a republic wherein the Executive Branch is not free to ignore the will of Congress or the requirements of the Constitution, and where the legality of Administration action is subject to judicial review. It would seem clear that there could be nothing more important to this nation's credibility and respect than its reputation as a government true to its own principles, and whose officials are not themselves above the law.

Further, the intervenors argue that without a stay Japanese fishing and whaling interests will suffer. Although it is true that Japanese fishing interests will surely be injured, this factor alone does not require the Court to grant the stay. The Packwood-Magnuson sanction was designed to cause this very harm, so as to act as an incentive for foreign nations to respect the IWC quotas. Should the Japanese cease whaling and withdraw their objection to the general whaling moratorium, the Secretary of Commerce may withdraw certification and the sanctions will cease. 16 U.S.C. § 1821(e)(2)(B). Thus, even this harm is not irreparable. The Japanese whaling interests likewise will not be irreparably harmed by denial of the stay. The 1984–85 whaling season will end on April 1 of this year, and the next season will not begin for six months thereafter. Thus, there will be sufficient time for this case to be decided on appeal without significantly interfering with the Japanese whaling practices, should they be resumed. Therefore, petitioners have failed to meet the test of irreparable injury.

c) *Other Parties Interested In This Action Would Be Substantially Harmed.*

The third factor to be considered by the Court is whether a stay would result in substantial harm to other parties interested in this action. *Virginia Petroleum Job-*

*bers, supra.* It is clear to the Court that such substantial harm would result. Should the petitions be granted, the Japanese would have no incentive to cease sperm whaling .in violation of the IWC zero sperm whale quota. According to the plaintiffs' reply memorandum, Japan has already taken 250 sperm whales this season. Thus, even should Japan honor the November 13, 1984 exchange of letters in which it agreed not to exceed taking 400 sperm whales this season, a minimum of 150 more of these already endangered creatures could be taken and killed before the season ends on April 1. The plaintiff organizations are vitally interested in the conservation and protection of these' and other whale species. That interest would be substantially harmed by the granting of a stay.

Further, the 1985 IWC conference is scheduled for next July. Preparations are being made for that conference at this time, and the eyes of the world are upon the reaction of the United States to this test of its commitment to the IWC. A stay at this time would only encourage other nations to circumvent the IWC and come to Washington to make separate agreements with the United States, outside the purview of the IWC and other international fisheries conservation agreements. Thus, the very stability and vitality of the International Convention For the Regulation of Whaling is tied up with the actions of the United States in response to the issues raised in this case. The United States Congress has decided to put this country in the role of policing the IWC quotas by using economic sanctions as an incentive for other nations to respect the IWC findings. Failure to put these sanctions into play in a situation such as the one at bar places that United States commitment in doubt on the eve of the next IWC conference, and could very well change the direction of the IWC itself by removing the major force for enforcement of its decisions. Thus, petitioners have failed to meet the third part of the test as well.

d) *The Public Interest Lies With Denying The Petitions For Stay Pending Appeal.*

■ The fourth factor to be considered by the Court is where does the public interest lie. "The public interest ia a uniquely important consideration in evaluating a request for [interim relief]." *National Association of Farmworkers Organizations v. Marshall,* 628 F.2d 604, 616 (D.C.Cir.1980). As the petitioners have recognized, the public interest lies with the protection and preservation of the whales. Congress, through the enactment of both Pelly and Packwood-Magnuson, has established this public interest in strengthening and supporting the IWC, by creating a mechanism for enforcing compliance with IWC decisions. This public interest would be thwarted by granting a stay and allowing the Japanese to avoid the Congressionally mandated sanction for violating the IWC zero sperm whale quota.

■ The Court is not unaware of the defendants' responsibilities, including, but not limited to, that of the President to conduct our foreign policy and relations with foreign countries. The President is faced with a myriad of competing interests in his handling of foreign affairs. He must take into account not only international trade decisions, but also, in this instance, the viability of the IWC, the culture of the Japanese as it bears upon this matter, the effect the Court's decision might have upon future negotiations, the ability of our own fishing industry, and others, to export their products to Japan, and a whole panoply of problems which the Executive Branch must face in the conduct of its duties under the Constitution and the laws of the United States. However, the question before the Court, even though one of first impression, is actually a very narrow one, namely, whether the Secretary of Commerce has any discretion to determine if certification is required in the face of violations of the IWC quota. As previously indicated, this Court, in its March 5, 1985 Opinion, held that, by virtue of the Congressional enactment of the Pelly and Packwood-Magnuson Amendments, Congress has mandated the actions of the Secretary in this instance.

Thus, in light of the undisputed facts of the case at bar, certification has been made a ministerial duty. If the Executive Branch cannot, because of Pelly and Packwood-Magnuson, deal effectively with the multitude of problems presented by the relationship between the United States and Japan, it should take such matter to the Congress promptly, on an emergency basis, and perhaps should have done so before now, rather than wait until after this suit was filed. To repeat, this case represents a clear mandate of Congress of which the Secretary of Commerce and his subordinates have long been aware, as they have been aware of the actions of the IWC. The facts of this case indicate that the agency has consistantly acted in concert with the interpretation argued by the plaintiffs and accepted by this Court. Such Congressional and agency action has been in concert with the public interest in whale conservation. Thus, the public interest lies with denying the applications for a stay pending appeal.

## CONCLUSION

■ To say that the denial of the stay "lets all the toothpaste out of the tube," and makes resolution of many other problems impossible, while adversely affecting the conduct of diplomacy is, to say the least, an overstatement. The will of the Congress must be obeyed, even though the United States, a signatory to the Convention, wishes to ignore the IWC's resolution as it pertains to Japan and thus frustrate that will. To ignore the foregoing facts and analysis would put the Court in the position of ignoring its duty to uphold the laws and the will of the first branch of our government, namely, the Congress of the United States, under Article III of our Constitution. Congress has been capable of acting quickly in an emergency before, and certainly *could* do so again, were the Executive willing to ask that the law be changed in view of the problems outlined in the Federal Defendants' Motion for Stay Pending Appeal. This Court is not unsympathetic to the plight of the Executive Branch, but having carefully considered this matter on the undisputed record and

the law, the Court is confident that it has done its duty as a matter of law and is correct in its decision of March 5, 1985.

By virtue of the foregoing, and having carefully considered the applications of the defendants and defendant-intervenors, the Court concludes that it has no choice but to deny their request for a stay pending appeal. It is, therefore, by the Court, this 13 day of March, 1985

ORDERED that the defendants' and defendant-intervenors' applications for a stay pending appeal be, and the same are, hereby denied.