Christopher SHAYS & Martin Meehan, Plaintiffs,

v.

FEDERAL ELECTION COMMISSION, Defendant.

No. CIV.A. 02–1984(CKK).

United States District Court, District of Columbia.

Oct. 19, 2004.

Charles G. Curtis, Jr., Michelle M. Umberger, Michael M. Markman, David L. Anstaett, Heller, Ehrman, White & McAuliffe, L.L.P., Madison, WI, Brent N. Rushforth, Carl S. Nadler, Heller, Ehrman, White & McAuliffe LLP, Washington, DC, Roger M. Witten, David A. O'Neil, Wilmer, Cutler & Pickering, New York City, Randolph Moss, Stacy E. Beck, Wilmer, Cutler & Pickering, LLP, Donald J. Simon, Sonosky, Chambers, Sachse, Endreson & Perry LLP, Fred Wertheimer, Alexandra Edsall, Democracy 21, Washington, DC, for Plaintiffs.

Robert William Bonham, III, Washington, DC, for Defendant.

Karl Joseph Sandstrom, Robert Felix Bauer, Perkins Coie, LLP, James P. Joseph, Arnold & Porter, Washington, DC, for Movants.

Michael B. Trister, Lichtman, Trister, Singer & Ross, Trevor Potter, Caplin & Drysdale, Washington, DC, J. Gerald Hebert, Alexandria, VA, for Amicus.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

Before the Court is Defendant Federal Election Commission's ("FEC" or "Commission") application for a stay pending appeal of the Court's September 18, 2004, Opinion and Order, 337 F.Supp.2d 28, in this case. That decision, which granted-in-part and denied-in-part Plaintiffs' Motion for Summary Judgment and granted-in-part and denied-in-part Defendant's Motion for Summary Judgment, found that numerous regulations promulgated by the Commission in the wake of the Bipartisan Campaign Reform Act ("BCRA") undermined and thwarted congressional purposes behind BCRA and either failed *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) review or violated the strictures of the APA. *See Shays v. F.E.C.,* 337 F.Supp.2d 28, 130–31 (D.D.C.2004). In the Remedy section of that ruling, the Court explicitly denied Plaintiffs' request for injunctive relief and remanded the defective regulations to the FEC "for further action consistent with this opinion" without vacating them. *Id.* at 130.

Having filed a Notice of Appeal on September 28, 2004, to document its appeal to the Court of Appeals for the D.C. Circuit, the Commission filed a Motion for Stay Pending Appeal on October 1, 2004, requesting that this Court "clarify for the public the state of the law in the wake of the Court's decision." Def.'s Mot. for Stay at 2. The Commission's petition further asks that "the Court make clear that, until the Court of Appeals issues its final decision on the appeal, (1) the regulations found defective remain in effect and (2) the Commission is not required to initiate rulemaking proceedings under this Court's remand order." *Id.* Plaintiffs' filed a Response to the FEC's motion, which decries the "complete abdication of the Commission's responsibility" through its request that the Court clarify and/or stay its September 18, 2004, Opinion and Order, Pls.' Response at 1, and the Commission subsequently filed a Reply.

Upon a careful consideration of these filings and the relevant legal authority, the Court declines to stamp the Commission's "business-as-usual" tactics and request for delay with the judicial imprimatur of approval. Rather, the Court concludes that the FEC has failed to meet the stringent standards required to justify the extraordinary remedy of a stay pending appeal and therefore shall deny the Commission's motion. Importantly, while the Court has determined that it lacks jurisdiction to go beyond identifying the FEC's errors of law in the defective regulations, *Shays*, 337 F.Supp.2d 28, 130–31 (D.D.C.2004), and notes that the deficient rules technically remain "on the books," the Commission should conduct proceedings consistent with the Court's opinion and remand in order to assuage its abrogation of both congressional intent and the public interest.[1]

## I: BACKGROUND

On February 13, 2002, the House of Representatives passed H.R. 2356. *McConnell v. F.E.C.*, 251 F.Supp.2d 176, 205 (D.D.C.2003) (per curiam). The bill was then adopted by the Senate on March 18 and 20, 2002. Def.'s Stmt. of Material Facts Not in Genuine Dispute ("Def.'s Stmt.") ¶ 1. President George W. Bush signed H.R. 2356 into law on March 27, 2002. *Id.* The Act, commonly known as the Bipartisan Campaign Reform Act or "BCRA," represents the most recent amendment to the Federal Election Cam-

paign Act of 1971 ("FECA"). *Id.* at ¶¶ 2–3.

The Federal Election Commission is the independent agency of the United States government with exclusive jurisdiction to administer, interpret and civilly enforce FECA. *Id.* ¶ 4. Section 402(c)(2) of the BCRA required the Commission to promulgate rules within 90 days of BCRA's enactment to carry out provisions found in Title I of BCRA, which added new limitations on party, candidate, and officeholder solicitations and use of nonfederal funds. *Id.* ¶ 6. After taking the proper steps involving notice, publication, and comment, the FEC transmitted its Title I regulations to Congress on July 16, 2002, and on July 29, 2002, the Commission promulgated its final rules and Explanation and Justification ("E & J") on "Prohibited and Excessive Contributions: Non-federal Funds or Soft Money." *Id.* at ¶ 7. These regulations became effective on November 6, 2002. Pls.' Stmt. of Genuine Issues in Opp'n to Def.'s Stmt. ("Pls.' Opp'n Stmt.") ¶ 4.

Section 402(c)(1) of BCRA required the FEC to promulgate within 270 days of its enactment the remaining regulations required to carry out BCRA. Def.'s Stmt. ¶ 8. After taking the proper steps involving notice, publication, and comment, the FEC transmitted its Electioneering Communications regulations to Congress on October 11, 2002, and on October 23, 2002, the Commission promulgated its final rules

---

1. "Generally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1096 (D.C.Cir.1996), *cert. denied*, 519 U.S. 1077, 117 S.Ct. 737, 136 L.Ed.2d 676 (1997); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C.Cir.1999) ("Not only was it unnecessary for the court to retain jurisdiction to devise a specific remedy for the

Secretary to follow, but it was error to do so."). Taking this analogy one step further, the agency's obligation upon remand to commence proceedings that will ultimately lead to the promulgation of revised rules is much like a district court's duty to issue a new ruling upon reversal by an appellate court: while the FEC must be given time to carefully examine the existing inadequate regulations, it is duty-bound to revisit the underpinnings of its regulations with reasonable expediency.

and Explanation and Justification ("E & J") on "Electioneering Communications." *Id.* ¶ 9. These regulations became effective November 22, 2002. Pls.' Opp'n Stmt. ¶ 5. The Commission followed the same basic steps with its "Contribution Limitations and Prohibitions" regulations—transmitted on November 8, 2002, promulgated in the Federal Register on November 19, 2002, Def.'s Stmt. ¶¶ 10–11—and with its "Coordinated and Independent Expenditures" regulations—transmitted on December 18, 2002, promulgated on January 3, 2003, and effective on February 3, 2003, Pls.' Opp'n Stmt. ¶¶ 6, 13.

Plaintiffs Christopher Shays and Martin Meehan are both citizens of the United States, members of Congress, candidates, voters, fundraisers, and members of political parties. *Id.* ¶ 11.[2] Both Plaintiffs were principal sponsors in the House of Representatives of the legislation enacted as BCRA and spent many years seeking to promote its enactment. *Id.* ¶ 9. Plaintiffs, along with other co-sponsors of BCRA, submitted written comments on the FEC's proposed rules implementing BCRA's provisions—some of which were not adopted by the Commission in its final rules. *Id.* ¶ 10. Distressed by the structure and loopholes of many of the Commission's final regulations, Plaintiffs brought this action, alleging that "[t]he FEC's new regulations, in multiple and interrelated ways, thwart and undermine the language and congressional purposes of Title I and II of BCRA." Am. Compl. ¶ 6.

Upon a review of Plaintiffs' panoply of asserted deficient regulations, this Court found that these challenged rules promulgated by the FEC survived both *Chevron* and APA review:

- 11 C.F.R. § 300.2(c)(3) (the "Grandfather" provision)
- 11 C.F.R. § 300.32(a)(4) (the "Levin fund" fundraising regulation)
- 11 C.F.R. § 300.30(c)(3) (regulation regarding accounting procedures)
- 11 C.F.R. § 100.14 (regulating defining "State," "District," and "local committee")

*Shays,* 337 F.Supp.2d 28, 130 (D.D.C.2004).

However, this Court concluded that these contested regulations failed either *Chevron* or APA review, and required that they be remanded back to the Commission for further action consistent with the decision:

- 11 C.F.R. § 109.21(c) (coordination content regulations), including 11 C.F.R. § 109.21(c)(iv) (provision excluding the Internet from coordination communication regulations)
- 11 C.F.R. § 109.3 (coordination definition of "agent")
- 11 C.F.R. § 300.2(m) (definition of "solicit")
- 11 C.F.R. § 300.2(n) (definition of "direct")
- 11 C.F.R. § 300.2(b) (nonfederal money definition of "agent")
- 11 C.F.R. § 300.64(b) (state party fundraiser provision)

**2.** Plaintiff Christopher Shays is a Member of the United States House of Representatives from the Fourth Congressional District of the State of Connecticut. Pls.' Opp'n Stmt. ¶ 7. He was first elected in 1987, was re-elected in 1992, and has been re-elected every two years thereafter and is running for re-election in November 2004. *Id.* Plaintiff Martin Meehan is a Member of the United States House of

Representatives from the Fifth Congressional District of the Commonwealth of Massachusetts. *Id.* ¶ 8. He was first elected to Congress in 1988, and has been re-elected every two years thereafter and is running for re-election in November 2004. *Id.* Plaintiffs are subject to regulation under FECA, BCRA, and the Commission's related regulations. *Id.* ¶ 11.

- 11 C.F.R. § 100.24(a)(2) (definition of "voter registration activity")
- 11 C.F.R. § 100.24(a)(3) (definition of "get-out-the-vote activity")
- 11 C.F.R. § 100.24(a)(4) (definition of "voter identification")
- 11 C.F.R. § 100.25 (definition of "generic campaign activity")
- 11 C.F.R. § 300.33(c)(2) (provision regarding state, district and local employees)
- 11 C.F.R. § 300.32(c)(3) (*de minimis* Levin Amendment exemption)
- 11 C.F.R. § 100.29(c)(6) (exemption for Section 501(c)(3) organizations from electioneering communication regulations)
- 11 C.F.R. § 100.29(b)(3)(i) ("for a fee" electioneering communication requirement)

*Shays*, 337 F.Supp.2d 28, 130 (D.D.C.2004).

As a result of the Court's ruling, the Commission filed the Motion For Stay of September 18, 2004, Order Pending Appeal currently pending before this Court.[3] In many ways, the title of the FEC's motion is a bit of misnomer: in part, the Commission seeks clarification of the Court's prior ruling so "the Commission does not inadvertently violate the Court's actual intent." Def.'s Mot. for Stay at 2. According to the FEC's reasoning,

[a] stay order explicitly confirming that the regulations remain in effect pending a decision on appeal would, therefore, be consistent with the case law underlying this Court's remedial order and ... would be appropriate under the relevant legal standard for a stay pending appeal. It would also have the salutary effect of clarifying the current state of the law for members of the public whose politi-

cal activities are subject to those regulations.

*Id.* at 3. In addition to the alimentary psychological benefits of such a decision, the Commission seeks a stay so that it may avoid the initiation of remand proceedings before there is a final judgment on appeal so that it does not have its appeal "mooted," so that it will not be forced to "reallocate its limited resources, at a time when it is heavily burdened with other activities, to conduct a rulemaking the court of appeals may ultimately find to have been unnecessary," and so that "[t]he regulated community and public [will not] suffer from a diversion of resources from other agency priorities." *Id.*

Plaintiffs respond by asserting that the FEC's motion is completely unnecessary given the contours of this Court's September 18, 2004, ruling. According to Plaintiffs, "[t]his Court thus gave the Commission the discretion—and the responsibility—to decide in the first instance (subject to judicial review) how best to proceed." Pls.' Response at 1. However, Plaintiffs contend that the FEC has shirked its responsibilities: "Rather than exercising its responsibility and giving the regulated community and public any guidance, the Commission has now belatedly returned to this Court and insisted that it is for the *Court* 'to clarify for the public the state of the law in the wake of the Court's decision.'" *Id.* (quoting Def.'s Mot. for Stay at 2) (emphasis in original). Despite these objections, Plaintiffs insist they were willing to stipulate to a stay pending appeal subject to two conditions:

(a) that the Commission immediately decide which aspects of the Court's rul-

---

**3.** While the FEC has filed a Notice of Appeal with the Court of Appeals for the D.C. Circuit, it has not yet identified which portions of the Court's September 18, 2004, Opinion and Order that it will be appealing. Def.'s Mot. for Stay at 4.

ing it is actually challenging, with the stay to extend only to those portions of the Court's decision; and (b) that the Commission join plaintiffs in seeking expedited review by the Court of Appeals so that the appeal may be submitted for decision in early 2005, in order to allow new rules to be in effect as early in the 2006 election cycle as possible.

*Id.* at 2. However, the Commission refused to agree with these conditions, necessitating the FEC's Motion for Stay and Plaintiffs' Response. Decl. of Charles G. Curtis, Jr. ¶ 4. The FEC's refusal to compromise, Plaintiffs allege, highlights the fact that "[t]he Commission thus wants everyone else, including this Court, to treat this matter as an emergency while it remains free to proceed on its business-as-usual pace." Pls.' Response at 2. Plaintiffs conclude by suggesting that the Commission has failed to justify a stay pending appeal based on the relevant standards. In order to evaluate the merits of the FEC's motion and Plaintiffs' counter-argument, the Court shall first set out the pertinent legal requirements that must be met in order to obtain a stay pending appeal, and then shall proceed to an evaluation of the merits of the Commission's arguments.

## II: LEGAL STANDARD

The following factors are to be considered when determining whether a stay pending appeal is warranted:

(1) likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the Court grants the stay; and (4) the public interest in granting the stay. To justify the granting of a stay, a movant need not always establish a high probability of success on the merits. Probability of

success is inversely proportional to the degree of irreparable injury evidenced. A stay may be granted with either a high probability of success and some injury, or *vice versa.*

*Cuomo v. U.S. Nuclear Regulatory Comm'n,* 772 F.2d 972, 974 (D.C.Cir.1985); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977); *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958); *see also D.C. Circuit Handbook of Practice and Internal Procedures* Part VIII(a) (2003).

█ Importantly, it is "the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Cuomo,* 772 F.2d at 978; *see also Twelve John Does v. District of Columbia,* Civ. A. No. 80–2136, 1988 WL 90106, at *1 (D.D.C. Aug.4, 1988) ("An indefinite stay pending appeal is an extraordinary remedy, and is to be granted only after careful deliberation has persuaded the Court of the necessity of the relief.") (citing *Virginia Petroleum Jobbers,* 259 F.2d at 925). "This Circuit has recently reiterated that the applicant must satisfy 'stringent standards required for a stay pending appeal.'" *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group,* 230 F.Supp.2d 12, 14 (D.D.C. 2002) (citing *Summers v. Howard Univ.,* Civ. A. No. 02–7069, 2002 WL 31269623 (D.C.Cir. Oct.10, 2002)). Where a moving party fails to establish a substantial case on the merits, and further fails to "demonstrate that the balance of equities or the public interest strongly favor the granting of a stay," a motion for stay is properly denied. *Cuomo,* 772 F.2d at 972.

## III: DISCUSSION

█ Upon a consideration of both the factors relevant to the determination of a motion for stay and the circumstances

faced by the Commission, the Court finds that the FEC fails all four prongs required to substantiate the granting of a stay. The Court summarizes its analysis of the relevant test, as applied to the context of the instant case, as follows.

**A. The Commission Has Failed to Show a Strong Likelihood of Prevailing on the Merits.**

"The first, and most important, hurdle which the petitioners must overcome is the requirement that they present a strong likelihood of prevailing on the merits of their appeal." *Am. Cetacean Soc. v. Baldrige*, 604 F.Supp. 1411, 1414 (D.D.C. 1985). "Without such a substantial indication of probable success, there would be no justification for the Court's intrusion into the ordinary processes of administration and judicial review." *Virginia Petroleum Jobbers*, 259 F.2d at 925. "Even should the petitioner show irreparable harm would result without the imposition of [a] stay, if the requirement of a strong likelihood of success is not met, the petition will be denied." *Am. Cetacean Soc.*, 604 F.Supp. at 1414 (citing *Blankenship v. Boyle*, 447 F.2d 1280 (D.C.Cir.1971)). This does not mean that the applicant's chances of success on appeal must appear as a "mathematical probability," but that the trial court, in the exercise of its discretion, must weigh the probability of success on appeal in a "balance of equities" with the three other factors. *Washington Metro. Area Transit Comm'n*, 559 F.2d at 844. The motion to stay may be granted when a "serious legal question is presented, when little if any harm will befall other interested persons or the public, and when denial of the order would inflict irreparable injury on the movant." *Id.*

*1. Standing and Ripeness*

The Commission has failed to make out "a substantial case on the merits" as to its standing and ripeness claims. *Cuomo*, 772 F.2d at 974. As more thoroughly explained in the Court's September 18, 2004, Opinion, the FEC's position that Plaintiffs' lack proper standing and that their claims are not ripe for review is fundamentally meritless. Plaintiffs plainly meet the three-prong test for Article III standing article in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.E.2d 351 (1992). First, Plaintiffs meet the "injury in fact" requirement because "Plaintiffs are directly regulated by the rules they challenge in that the regulations shape the environment in which Plaintiffs must operate." *Shays*, 337 F.Supp.2d 28, 44 (D.D.C.2004). Moreover, the rights that Plaintiffs, mired in general election contests that are currently ongoing, "seek to vindicate—in essence, to campaign in a regime that reflects Congress' mandate as articulated in the BCRA—are legally cognizable." *Id.* at 45. Second, Plaintiffs have met the causation requirement because "[t]he harm that Plaintiffs have alleged, having to adjust their campaigns to account for activities that they maintain should be banned but are permitted by the regulations, is connected to all of the regulations they challenge." *Id.* at 46. Any injury that they have suffered is "fairly traceable" to the deficient regulations promulgated by the Commission. *Id.* Third, Plaintiffs proffered an uncontested showing that "favorable rulings for Plaintiffs will result in changes to the regulations that the Court finds to be improper," *id.* at 46, ensuring that they have adequately satisfied the redressability prong of the Article III standing analysis. Plaintiffs also clearly met the "zone of interests" requirement necessary to establish prudential standing under the APA. *Id.*

Additionally, Plaintiffs satisfied the ripeness doctrine. While their claims might "ordinarily be considered unripe for re-

view," *id.* at 48, the Plaintiffs met the traditional test of (1) the fitness of the issues for judicial decision and (2) hardship to the Plaintiffs that would result from withholding court consideration. *Id.* (citing *Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* 538 U.S. 803, 123 S.Ct. 2026, 2030, 155 L.E.2d 1017 (2003)). Plaintiffs' challenges do not rely on speculation as to how the regulations will be applied; rather, their challenges were purely legal, and no judicial or agency considerations warranted delay in reviewing the regulations. *Id.* at 48–50. These factors entailed that—as outlined by a veritable deluge of precedent—the Court did not have to consider the "hardship" prong and did not have to postpone review. *Id.* at 50.

The standing and ripeness arguments forwarded by the Commission in response to the Court's September 18, 2004, ruling are fundamentally unavailing. The FEC "has offered no new arguments in its motion, but rather rehashes arguments that have been rejected . . . ." *U.S. v. Judicial Watch, Inc.,* 241 F.Supp.2d 15, 16 (D.D.C. 2003), *stay denied,* No. 03–5019, 2003 WL 1089413, at *1 (D.C.Cir. Mar.6, 2003); *see also U.S. v. Herbert Bryant, Inc.,* Civ. A. Nos. 73–2211, Civ. A. 73–1903, 1990 WL 102790, at *2 (D.D.C. July 9, 1990) ("In moving for reconsideration and in seeking a stay and/or injunction, [movant] has failed to present anything which would suggest that the decision reached by the Court is in error.").

Perhaps recognizing that it cannot successfully put new gloss on discarded arguments, the Commission attempts to circumvent the Court's remand by suggesting that "[b]ecause the Commission has presented substantial arguments as to the novel and complex jurisdictional issues in this matter, this case is an especially appropriate one for a stay pending appeal."

Def.'s Mot. for Stay at 6. The FEC also suggests that "[t]he Commission's arguments that plaintiffs' claims are not ripe for review present equally serious legal issues." *Id.* at 7. Contrary to the Commission's assertions, the Court concludes that the FEC has failed to make out a "substantial case on the merits" on the standing and ripeness issue as required and has not presented "questions going to the merits so serious, substantial, difficult and doubtful" to necessitate a stay. *Washington Metro. Area Transit Comm'n,* 559 F.2d at 843, 844 (quoting *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir.1953)). Instead, the Commission has merely presented the Court with arguments that contradict time-honored precedent and run afoul of well-established jurisprudential tests.

### 2. The Challenged Regulations

The Commission has failed to make out "a substantial case on the merits" as to its contention that this Court's finding of numerous defective BCRA regulations was erroneous. *Cuomo,* 772 F.2d at 974. Once again, the FEC offers little more than a regurgitation of rejected arguments in an effort to convince the Court that its objections establish the foundations of a likelihood of success on the merits upon appeal. Essentially, the Commission's Motion for Stay reiterates its prior arguments concerning the presumptive validity of agency regulations and the highly deferential standard of review usually afforded to agency determinations. Def.'s Mot. for Stay at 9–11. The Court specifically acknowledged both of these arguments in its September 18, 2004, Opinion, *Shays,* 337 F.Supp.2d 28, 51–55 (D.D.C.2004), and directly cited many of the cases upon which the FEC now relies.

However, this Court noted that the deferential standard may be undermined:

"[i]f the FEC's interpretation unduly compromises the Act's purposes, it is not a 'reasonable accommodation' under the Act, and it would therefore not be entitled to deference." *Orloski [v. F.E.C.]*, 795 F.2d 156, 164 (D.C.Cir.1986) (quoting *Chevron*, 467 U.S. at 845[, 104 S.Ct. 2778]); *see also Chevron*, 467 U.S. at 845[, 104 S.Ct. 2778] (providing that if the agency's "choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.") (quoting *United States v. Shimer*, 367 U.S. 374, 382[, 81 S.Ct. 1554, 6 L.Ed.2d 908] (1961)); *Common Cause v. Federal Election Commission*, 692 F.Supp. 1391, 1396 (D.D.C.1987) ("[W]here the agency interprets its statute in a way that flatly contradicts Congress's express purpose, the court may—indeed must—intervene and correct the agency.").

*Id.* at 52. Additionally, this Court recognized that while agency regulations are presumptively valid,

> [t]he degree of deference a court should pay an agency's construction is, however, affected by "the thoroughness, validity, and consistency of an agency's reasoning." *Federal Election Commission v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37[, 102 S.Ct. 38, 70 L.Ed.2d 23] (1981). Moreover, this Circuit has noted that "a permissible statutory construction under *Chevron* is not always reasonable under *State Farm*: 'we might determine that although not barred by statute, an agency's action is arbitrary and capricious because the agency has not considered certain relevant factors or articulated any rationale for its choice.'" *Republican Nat'l Comm. [v. F.E.C.]*, 76 F.3d [400] at 407

[(D.C.Cir.1996)] (quoting *Arent v. Shalala*, 70 F.3d 610, 620 (D.C.Cir.1995) (Wald, J., concurring in the judgment)).

*Id.* at 54.

The Court has considered the standards forwarded by the Commission regarding deferential treatment, has employed them, and has found many of the Commission's BCRA regulations wanting. Mere repetition of general legal standards does not mean that the FEC is any more likely to succeed on the merits of its claims than it was on September 18, 2004. As explained below, here the balance of harms does not favor a stay, and thus it remains "particularly important for the movant to demonstrate a substantial likelihood of success on the merits." *Dodd v. Fleming*, 223 F.Supp.2d 15, 20 (D.D.C.2002). The Commission has not done so—the arguments raised by the FEC do not "raise questions going to the merits so serious, substantial, difficult and doubtful" as to require further "deliberative investigation" on them. Rather, the Commission has failed to proffer significant analysis indicating that it should prevail when the exception to the general rule of deference is applied. The FEC's inability to establish a likelihood of success on the merits therefore fatally undermines its stay request.

## B. The Commission Has Failed to Show Irreparable Harm.

"Under this Circuit's precedent, the harms to each party are tested for 'substantiality, likelihood of occurrence, and adequacy of proof.'" *Judicial Watch v. Nat'l Energy Policy Dev. Group*, 230 F.Supp.2d at 15 (quoting *Cuomo*, 772 F.2d at 976–77). "The Court must consider the significance of the change from the *status quo* which would arise in the absence of a stay, as well as likelihood of occurrence of the claimed injury, when determining

whether defendants have truly met their burden of demonstrating irreparable harm justifying imposition of a stay." *Id.* "A party moving for a stay is required to demonstrate that the injury claimed is 'both certain and great.'" *Cuomo*, 772 F.2d at 976 (quoting *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C.Cir. 1985)).

. The Commission essentially has two arguments as to why a failure to grant a stay pending appeal will irreparably harm its interests. First, the FEC contends that irreparable harm will occur without a stay because "even if the Commission is successful in its appeal, without a stay it will have irretrievably lost the resources and time expended on remand in reconsidering a substantial number of regulations concerning complex topics." Def.'s Mot. for Stay at 14. Second, the Commission worries that "if the Commission on remand rescinds the invalidated regulations and promulgates new ones that incorporate the Court's interpretation of BCRA, the Commission risks losing its opportunity to present its own views to the Court of Appeals, which might conclude that the Commission has mooted its own appeal." *Id.* at 13 (citing *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1012 (D.C.Cir. 1999)) (quoting *Occidental Petroleum Corp. v. S.E.C.*, 873 F.2d 325, 330 (D.C.Cir. 1989)). Linked to this issue is the FEC's concern that "if the Commission is required to proceed with the remand during the appeal, the agency could find itself in the untenable position of having to advocate incompatible legal positions." *Id.* at 15. The Court shall address these arguments in turn.

### 1. Wasted and Diverted Resources

The FEC's first argument—that potentially wasted and diverted staff resources constitute an "irreparable harm"—is mer-

itless. "The key word in this consideration is *irreparable. Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay are not enough.*" *Nat'l Cable Television Ass'n v. Columbia Pictures Indus., Inc.*, Civ. Nos. 83–1655, 83–2785, 84–3097, 1986 WL 32734, at *1 (D.D.C. Aug.20, 1986) (citing *Wisconsin Gas*, 758 F.2d at 674) (emphasis in original). The Commission seeks to avoid this rule by selectively quoting from *Occidental Petroleum*, which the FEC cites as providing: "'[T]he district court's decision . . . , if wrong, would result in a totally wasted proceeding' on remand, . . . and may yet bind the agency in future cases. Surely, . . . these burdens may constitute 'substantial irreparable harm to the [agency].'" Def.'s Mot. for Stay at 15 (quoting *Occidental Petroleum*, 873 F.2d at 331). However, *Occidental Petroleum* does not stand for this narrow principle: instead, the reference to a "totally wasted proceeding" is a mere throw-in as part of a long paragraph devoted to a concern over whether an agency may immediately appeal a district court order remanding a case for further agency proceedings. *See Occidental Petroleum*, 873 F.2d at 331. Indeed, the last sentence of the FEC's citation actually reads, "Surely, to recur to the Seventh Circuit's analysis, these burdens may constitute 'substantial irreparable harm to the [agency].'" *Id.* (citing *Palmer v. City of Chicago*, 806 F.2d 1316, 1319 (7th Cir.1986)). A reading of *Palmer* at the relevant pin cite reveals that the Seventh Circuit, like the D.C. Circuit in *Occidental Petroleum*, was concerned with the issue of whether an interim fee order could be immediately appealed, and not "wasted proceedings." *Palmer*, 806 F.2d at 1319. The *Palmer* court allowed immediate appeal so that the city's funds would not flow into the hands of individuals who could have become non-parties to the suit or

insolvent, thus preventing restitution if the court was ultimately reversed. *Id.*

■ These cited cases stand for the proposition that irreparable harm is created when an "agency would not have an opportunity to appeal the district court's ruling after the proceedings on remand," making the order "effectively unreviewable on appeal from a final judgment"—which makes a case for the Commission's *second* contention of irreparable harm, but not their first. *Occidental Petroleum,* 873 F.2d at 331. As such, the general rule that a court order directing "that the [commission] issue new guidelines [ ] does not cause irreparable harm" remains in effect. *Armstrong v. Executive Office of the President,* 877 F.Supp. 750, 752 (D.D.C.1995) (finding that where NSC had issued proper guidelines in the past, an order directing NSC to issue new guidelines in response to the litigation would create "no noticeable difficulty" and would not produce irreparable harm). Accordingly, simply because the Court's September 18, 2004, Opinion and Order will force the FEC to expend its energy and resources to ensure that its BCRA regulations conform with Congress' intent does not amount to "irreparable injury." The mere fact that a commission spends its initial resources acting as a super-legislature disregarding congressional intent does not insulate it from a later court order directing the reconsideration of its faulty regulations.

### 2. *The Dangers of Mootness and Inconsistency*

The Commission's second argument—promulgation of new rules could cause mootness of appeal or could compel inconsistent arguments—gives the Court greater pause. To support its argument that the Commission risks mooting its appeal to the D.C. Circuit if it promulgates new rules under this Court's remand order, the FEC cites *County of Los Angeles v. Shalala,* 192 F.3d at 1012, for the proposition that

> [b]ecause an agency must conduct its proceedings and render its decision pursuant to the legal standard that the district court articulates in its remand order, "[u]nless another party appeals [the agency's subsequent] decision, the correctness of the district court's legal ruling will never be reviewed by the court of appeals, notwithstanding the agency's conviction that the ruling is erroneous."

Def.'s Mot. for Stay at 13–14 (quoting *Occidental Petroleum,* 873 F.2d at 330) (brackets in original). Based on this danger, the FEC contends that it will suffer an irreparable injury without a stay.

Once again, the Commission's myopic focus on a specific segment of a D.C. Circuit opinion causes it to lose the overall meaning of the decision. The relevant D.C. Circuit cases dealing with the issue of the danger of non-review—*Occidental Petroleum, County of Los Angeles v. Shalala, NAACP v. U.S. Sugar Corp.,* 84 F.3d 1432, 1436 (D.C.Cir.1996), and *Am. Hawaii Cruises v. Skinner,* 893 F.2d 1400, 1403 (D.C.Cir.1990)—do not concern a motion for stay or an irreparable injury determination. Rather, the *Occidental Petroleum* line of cases provide a procedural solution around an otherwise insoluble problem: because a remand order is not usually a final decision, it normally cannot be appealed; but if an agency or commission returns from a remand order having conducted its proceedings and rendered its decision pursuant to that order, its previous arguments would be moot and it would be left with nothing to appeal. *See U.S. Sugar Corp.,* 84 F.3d at 1436. The *Occidental Petroleum* allows an exception to this apparent problem by permitting an appellate court to hear an agency's appeal

of certain remand orders. *Id.* ("To avoid that situation here, the rule of *Occidental* gives [the Court of Appeals] jurisdiction to hear the Department's appeal now."). Properly understood, then, *Occidental Petroleum* and its progeny provide the very avenue for the FEC's current appeal of this Court's September 18, 2004, Opinion and Order to the Court of Appeals for the D.C. Circuit. Contrary to the Commission's assertions, the *Occidental Petroleum* line of cases is not specifically concerned with the question of whether—once an appeal is filed and argued—enactment of new rules moots the old rules under appellate consideration.

However, simply because *Occidental Petroleum* does not concern itself with this particular quandary does not diminish the importance of possible mootness. While the cases cited by the Commission do not stand for the proposition it asserts, the proposition itself is still valid. The Supreme Court has made it clear that "no justiciable controversy is presented ... when the parties are asking for an advisory opinion, [or] when the question sought to be adjudicated has been mooted by subsequent developments ...." *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (footnotes omitted). "Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue." *Nat'l Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 814 (D.C.Cir.1982) (citing *Comm'r v. Shapiro*, 424 U.S. 614, 622–23 n. 7, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976) (IRS's proper service of new notice of deficiency and new notices of levy moots question whether previous levies and notice of deficiency were procedurally defective under applicable statute); *Sannon v. United States*, 631 F.2d 1247, 1250–51 (5th Cir.1980) (case can be mooted by amendment of regulations or promulgation of new regulations providing relief

requested)). Accordingly, if the FEC enacts and enforces new regulations that conform to this Court's September 18, 2004, Opinion and Order, it faces the danger of mooting its appeal. *See Nat'l Res. Def. Council*, 680 F.2d at 813 ("In light of the Commission's repromulgation of the rule after providing notice and an opportunity for comment, we conclude that this issue is now moot."); *Ctr. for Sci. in the Pub. Interest v. Regan*, 727 F.2d 1161, 1164 (D.C.Cir.1984) (Treasury Department's promulgation of new rescissory rule to supersede defective rule making and rescind a regulation concerned with alcoholic beverage ingredient disclosure rendered moot controversy surrounding original rule).

However, a more subtle reading of the Court's September 18, 2004, Opinion and Order guards against this danger of mootness. As this Court noted, "when a court reviewing agency action determines that an agency made an error of law ... the case must be remanded to the agency for further *action* consistent with the corrected legal standards." *Shays*, 337 F.Supp.2d 28, 130 (D.D.C.2004) (quoting *Hawaii Longline Ass'n v. National Marine Fisheries Service*, 281 F.Supp.2d 1, 38 (D.C.Cir.2003) (quoting *County of Los Angeles v. Shalala*, 192 F.3d at 1011)) (emphasis added). The "further action" directed by this Court upon remand need not be the enactment and enforcement of newly effective regulations to replace the provisions found deficient. As the Court discusses *infra* III(C) and III(D), the current defective regulations cause substantial injury to both Plaintiffs and the public itself. The Commission, according to the terms of this Court's remand, can take significant steps in the interim before the Court of Appeals issues its ruling on this matter to alleviate the magnitude of these injuries *without* jeopardizing the status of

its appeal. The FEC may issue draft or proposed rules, solicit comments on its proposed rules from the public, and hold open hearings discussing these comments and the new draft rules during this interim without mooting its appeal. As a result of these measures, the Commission may have new, fully compliant regulations ready for immediate implementation after the expiration of its appeals process. These interim steps will substantially increase the likelihood that the revised, compliant regulations will be in place for a major portion of the 2006 election cycle and will mitigate against the injury to both Plaintiffs and public. Because mootness concerns may be avoided while significant progress achieved under this Court's remand order, the Commission's fears of "irreparable injury" are unfounded.

■■■ The Commission's final argument in this area concerning "irreparable harm" is its contention that if it follows this Court's September 18, 2004, Opinion and Order and issues new rules, it opens itself up to suit challenging the new regulations as overly broad while at the same time defending the old, more narrow regulations as proper during the appeals process. Def.'s Mot. for Stay at 15. Two problems doom the Commission's "irreparable harm" argument in this area. First, the FEC's concern is overstated: as discussed above, the Court's remand order does not require the enactment and enforcement of new rules; rather, it mandates further action in advancement of its findings with reasonable expediency. As such, the specter of conflicting litigation may well remain an apparition. Moreover, the Commission could certainly take further action on remand contingent upon the outcome of its appeal and reserve all rights. Such an action would avoid the possibility of any inconsistency, and would be the most prudent judicial determination

to prevent conflicting appeals. Second, the Commission's citation to *F.E.C. v. National Republican Senatorial Committee,* 966 F.2d 1471, 1476 (D.C.Cir.1992) ("*NRSC*"), is inapposite. The *NRSC* case simply noted that a district court's determination on the law, which proved incorrect, caused the commission to engage in work that ultimately proved fruitless. As discussed *supra* III(B)(1), the fact that an agency expends certain resources upon remand that are later decided to be unnecessary does not rise to the level of "certain and great" irreparable harm. As such, the FEC has failed to make the requisite showing of "irreparable injury" necessary to invite a stay pending appeal.

### C. Other Parties Interested in This Action Would Be Substantially Harmed

Plaintiffs focus on one central harm to their interests that would result upon a granting of a stay: possible delay of the implementation of Congress' intended BCRA reforms until the 2008 election cycle. Pls.' Response at 6–7. As with irreparable harm to the movant, harms to other parties interested in this action are tested for "substantiality, likelihood of occurrence, and adequacy of proof." *Judicial Watch v. Nat'l Energy Policy Dev. Group,* 230 F.Supp.2d at 15 (quoting *Cuomo,* 772 F.2d at 976, 977). "Relief saving one claimant from irreparable injury, at the expense of similar harm caused by another, might not qualify as the equitable judgment that a stay represents." *Delaware River Port Auth. v. Transamerican Trailer Transp., Inc.,* 501 F.2d 917, 924 (3d Cir.1974) (citing *Virginia Petroleum Jobbers,* 259 F.2d at 925).

Plaintiffs assert that it is not "reasonable for the Commission to demand extraordinary relief without agreeing to seek expedited review." Pls.' Response at 6.

Importantly, "[t]he longer the parties delay in submitting the case to the Court of Appeals, the further into the 2006 election cycle we will be before obtaining a definitive resolution." *Id.* If the Commission proceeds with new rulemakings and administrative actions too far into the 2006 election cycle, the Commission might well contend that it would be too late to change the flawed rules in time for that election, and the loopholes and provisions unfaithful to BCRA would continue until the 2008 elections. *Id.* As such, if a stay is granted and the FEC is allowed more time for handsitting, inaction, and needless delay, Plaintiffs will be forced to continue to alter their election strategies in anticipation of other actors taking advantage of the deficient regulations and engaging in activities that would otherwise be barred.

The Court finds Plaintiffs reasoning persuasive, their predicted injury significant, and their harm likely to occur. Federal elected officials, including Plaintiffs, have traversed this well-traveled road before. Congress "reluctantly" decided not to implement BCRA during the 2002 election cycle, but expected that the reform rules would be fully in place by the time of the 2004 elections. *See* 148 Cong. Rec. S2142 (daily ed. Mar. 20, 2002) (statement of Sen. McCain) (Congress had "reluctantly determined that it would simply not be practical" to apply the new system during the 2002 election campaign, but expected the reforms to be in place in time for the 2004 campaign); *see also id.* (statement of Sen. Feingold) (Congress intended to encourage "prompt and efficient" resolution of disputes so that "a new campaign finance system can be implemented in a certain and sure fashion for the 2004 elections"). The FEC's stay petition promises simply more of the same, and seeks to thwart the very essence of the wide-sweeping system of reform enacted by Congress for another interminable period of years.

Plaintiffs are indisputably participants in the federal campaign finance system. Their activities are affected not only by the manner in which they respond to the campaign finance rules, but also by the way in which other participants, both allies and adversaries, respond to the rules. The defective FEC regulations that currently confront them directly shape the environment in which they operate. The existence of loopholes and unfaithful regulations constitutes a daily injury to both their interests and the clearly articulated intent of Congress. *See Heckler v. Turner*, 468 U.S. 1305, 1309, 105 S.Ct. 2, 82 L.Ed.2d 891 (1984) (Rehnquist, J. in chambers) ("Every day [the stay] remains in force the clearly expressed intent of Congress is being frustrated."). The rights that Plaintiffs seek to vindicate—to campaign in a regime that reflects Congress' mandate as articulated in BCRA—are significant and compelling, and the burden placed upon the Commission to respond to these rights is comparatively slight.

Given this situation, in order to prevent the significant, irreparable injury that would accrue to Plaintiffs if revised regulations were not in place by the 2006 election cycle, the Commission upon remand should instigate proceedings and craft proposed regulations following this Court's September 18, 2004, Opinion and Order with reasonable expediency. If the Court of Appeals reverses this Court's grant of summary judgment for Plaintiffs on any of the revised regulations, the FEC may then simply discard the new draft provisions and retain the previous, contested provision. However, under a clear balancing of harms, Plaintiffs suffer a much greater harm in participating in and reacting to a regime that is contrary to the intent of Congress than the Commission suffers in possible "wasted proceedings." Accordingly, the Court finds that the FEC's pro-

posed stay is undermined by the significant and very real injury that would likely befall Plaintiffs.

### D. The Public Interest Lies With Denying the Petition For Stay Pending Appeal

The fourth and final factor to be considered by the Court when analyzing the FEC's request for a stay is where the public interest lies. "The public interest is a uniquely important consideration in evaluating a request for [interim relief]." *Am. Cetacean Soc.*, 604 F.Supp. at 1416 (quoting *Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 616 (D.C.Cir. 1980)). Under the public interest prong, the views of "Congress, the elected representatives of the entire nation," are "another sense by which the public interest should be gauged." *Cuomo*, 772 F.2d at 978. "[A] court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation." *U.S. v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001) (quoting *Virginia Ry. Co. v. System Federation No. 40*, 300 U.S. 515, 551, 57 S.Ct. 592, 81 L.Ed. 789 (1937)).

It would not be in the public interest to discard the trade-offs Congress carefully crafted in devising BCRA in favor of a contrary system of interpretation and regulation. The legislative history of BCRA reflects the delicate congressional balancing of the interests of federal officeholders and aspirants, political parties, third-party interest groups, and the citizenry at large with the need to equitably reform the existing campaign finance rules. As discussed in this Court's September 18, 2004, Opinion and Order, numerous regulations proffered by the FEC contravene Congress' clear intent and fail *Chevron* review or violate the APA. *See generally Shays*, 337 F.Supp.2d 28 (D.D.C.2004). The public is owed a campaign finance system whose contours reflect the democratic will as outlined in the expressed intent and explicit legislation enacted by their elected representatives—the Congress. In promulgating BCRA, Congress enacted a specific regime balancing money, access, free speech, and fair elections; granting a stay will simply delay the implementation of that vision and further deepen the injury to public interest.

The FEC, in its filings, largely avoids these implications, and instead predicts a litany of horrors that would result from a change in regulations for the current 2004 election cycle in which less than two weeks remain. Def.'s Mot. for Stay at 12. According to the Commission, "[p]olitical parties, candidates, contributors, political committees, and independent groups" who have relied on the previous regulations may now face "different and uncertain legal requirements," which could "create confusion, especially for legally unsophisticated participants." *Id.* Moreover, "because the Commission cannot possibly address all issues raised by the Court's decision in the short time remaining before the elections, and thus cannot provide timely guidance for the regulated community, even greater confusion would likely result." *Id.* Ultimately, failure to preserve the status quo "would impede the Commission's ability to administer the Act in a consistent manner, thereby injuring the public's interest in the integrity of the campaign finance system." *Id.* at 12–13.

The Court is not unaware of the difficulties that could occur as the result of a wholesale renovation of the defective FEC rules at this critical juncture in the 2004 election cycle. Indeed, the Court's September 18, 2004, Opinion and Order specifically rejected Plaintiffs' calls for an order "that the Commission shall, within fifteen

(15) days of this Order, commence proceedings to promulgate new regulations that remedy the defects in the … regulations ….” *Shays,* 337 F.Supp.2d 28, 129 (D.D.C.2004). As previously discussed, the Court instead decided to remand the deficient regulations to the Commission without vacating them, leaving it “up to the agency to determine how to proceed next—not for the Court to decide or monitor.” *Id.* at 130 (quoting *Hawaii Longline Ass'n,* 281 F.Supp.2d at 38 (quoting *County of Los Angeles v. Shalala,* 192 F.3d at 1011)). As noted *supra* n. 1, the Commission should take procedural steps leading towards the drafting of proposed regulations to replace the rules found defective by this Court with “reasonable efficiency.” It is noteworthy that Congress, in enacting BCRA, also recognized this need for the FEC to promulgate rules with reasonable efficiency in the first instance, so that Congress' intended campaign finance structure would be available at the next possible election cycle and in place as early as possible: Section 402(c)(2) of BCRA required the FEC to issue regulations within 90 days of BCRA's enactment to carry out the provisions found in Title I of BCRA, while Section 402(c)(1) required the FEC to promulgate the remaining rules required to carry out BCRA within 270 days of enactment.

As such, given the parameters of this Court's September 18, 2004, Opinion and Order, the Commission's predictions of disaster for the 2004 election participants are without foundation. The denial of a stay in no way imperils the public interest. Instead, the public interest is best served by enforcing Congress' intended campaign finance system expeditiously in order to assuage the harms produced by the Commission. In short, the Court concludes that the FEC has not established that the public interest dictates the need for a stay pending appeal, and has ultimately failed to meet *any* of the four factors necessary to establish the “extraordinary remedy” of a judicial stay.

## IV: CONCLUSION

Based on the reasons set forth above, the Court concludes that the FEC's Motion for a Stay Pending Appeal must be denied. An Order accompanies this Memorandum Opinion.

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is, this 19th day of October, 2004, hereby

**ORDERED** that Defendant's Motion for Stay Pending Appeal [57] is DENIED.

**SO ORDERED.**